NO. 07-09-00195-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 28, 2011

———————————————

DENVER CITY ENERGY ASSOCIATES, L.P., APPELLANT

v.

GOLDEN SPREAD ELECTRIC
COOPERATIVE, INC. AND GS ELECTRIC GENERATING
COOPERATIVE, INC., APPELLEES

———————————————

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 95,028-E; HONORABLE DOUGLAS WOODBURN, JUDGE

———————————————

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**OPINION**

Through four issues, appellant Denver City Energy Associates, L.P. (Denver City) appeals the trial court's judgment confirming an arbitrator's award in favor of appellees Golden Spread Electric Cooperative, Inc., (Golden Spread) and Golden Spread Electric Generating Cooperative, Inc. (GS Generating) and the trial court's order denying Denver City's motion to vacate. We will affirm.

Background

Denver City and GS Generating jointly own Mustang Station, an electric generating facility. Golden Spread purchases all the energy generated by the plant. Its purchase of electric energy from Denver City is governed by a January 1997 Power Purchase Agreement (PPA). All three companies are parties to a Joint Operating Agreement (JOA) which, among other things, prescribes the allocation of fuel costs between Denver City and GS Generating. From these complex documents, disagreements arose between Denver City and the other two parties. We previously addressed some disputed matters between Golden Spread and Denver City.[1] Other issues among the parties emerged concerning Denver City's allocation of certain fuel costs to GS Generating under the JOA and Denver City's billing procedure under the PPA. Golden Spread and GS Generating added these complaints against Denver City to then-pending litigation. Relying on terms of the PPA and JOA, Denver City initiated arbitration of the issues. The trial court recognized their arbitrability by order.

The complaints of Golden Spread and GS Generating against Denver City were docketed separately for arbitration but consolidated for hearing. The arbitration was conducted according to the commercial arbitration rules of the American Arbitration Association (AAA).[2] On the alleged liability of Denver City, Golden Spread and GS

---

[1] *See Golden Spread Elec. Coop. v. Denver City Energy Assoc., L.P.,* 269 S.W.3d 183 (Tex.App.--Amarillo 2008, pet. denied).

[2] The PPA provides it is governed "where applicable," by the United States Arbitration Act, as the Federal Arbitration Act (FAA) previously was known. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. __, __, 130 S.Ct. 1758, 1773, 176

Generating sought an award of injunctive relief and damages. The JOA and the PPA provided for hearing the arbitrated issues within thirty days of selection of the arbitrator. The arbitrator was then required to "notify the Parties in writing of the decision within sixty (60) days of the conclusion of the hearing." A single arbitrator heard the issues during the weeks of May 15 and May 22, 2006. By order of August 15, 2006, the arbitrator concluded the award was due within sixty days thereafter.

On October 5, 2006, the arbitrator issued an award wherein he noted "[t]he subject matter and the controversies arising out of the relationships between the parties are complex and difficult to understand." The arbitrator found Denver City breached the JOA and PPA to the injury of Golden Spread and GS Generating respectively. The award did not contain an amount of damages. Rather, it specified a method for Golden Spread and GS Generating to calculate past and future damages with the proviso that these entities provide Denver City their calculations and "all associated work papers" by November 14, 2006. Denver City was directed to cease and desist from its former billing procedure, which produced damages to Golden Spread and GS Generating, and

L.Ed.2d 605 (2010) (indicating proper title of current act); 9 U.S.C.A. §§ 1-16 (West 2009).

The JOA provides only that it is governed by the law of Texas. According to Denver City this means the Texas Arbitration Act (TAA), Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2011), and the FAA apply simultaneously since the JOA affects interstate commerce. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). Appellees do not argue otherwise. Under a general choice-of-law provision, such as that of the JOA, we will apply the FAA although the TAA also applies to the extent it is consistent with the FAA. *Roehrs v. FSI Holdings, Inc.,* 246 S.W.3d 796, 803 (Tex.App.—Dallas 2008, pet. denied) (citing *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 779-80 (Tex. 2006)).

required to pay damages as to months before it modified its procedure. The award further provided "[t]he Arbitrator shall keep the record open on this matter for a period of forty-five (45) days from the date of this Award for the limited purpose of addressing any disputes that arise that are directly related to the computation or payment of damages" and "if Golden Spread disagrees with [Denver City], the matter will be referred to the arbitrator for resolution."

Apparently acting on a motion by Golden Spread and GS Generating and response by Denver City, the arbitrator corrected typographical errors in the award and issued a "Corrected Arbitrator's Award" on November 15, 2006. The corrected award restated the entire award with the corrections. Because no party takes exception to the arbitrator's correction of the October 5 award in the manner stated, we hereinafter refer to the October 5 award as corrected on November 15 as the November 15 award.

Golden Spread and GS Generating transmitted their damage calculations to Denver City. After Denver City disputed the calculations, Golden Spread and GS Generating filed a motion seeking resolution by the arbitrator. Denver City responded that the arbitration was closed and the arbitrator lacked authority to consider damage calculations.

In an order of December 28, 2006, the arbitrator collectively awarded Golden Spread and GS Generating over $5 million in damages. According to the order, the arbitrator, in the November 15 award, "awarded damages and ordered the parties to apply numbers to a formula, failing in which, he would do so. The Arbitrator is not

4

modifying or changing an Award.  The Arbitrator concludes that the continuing oversight of damages computation by him is and was appropriate."

Golden Spread and GS Generating moved the trial court to confirm the award. Denver City sought vacation of the award as modified by the December 28 order on grounds that the award lacked finality and the arbitrator exceeded his authority.  After a hearing, the trial court denied Denver City's vacatur and confirmed the award to Golden Spread and GS Generating.  Denver City appeals.

First Issue

By its first issue, Denver City argues the arbitrator lacked authority to enter the December 28 order, and the trial court therefore erred by not vacating that order. Through multiple sub-issues it contends the JOA and PPA, the AAA rules,[3] the FAA[4] and TAA,[5] and common law[6] validate the argument.

---

[3] Denver City supports its argument with the following AAA rules.

R-35.  Closing of Hearing.  The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed. If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

R-36.  Reopening of Hearing.  The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

Denver City's argument is rooted in a sentence appearing in the arbitration paragraphs of both the JOA and PPA, "The arbitrator shall notify the Parties in writing of the decision within sixty (60) days of the conclusion of the hearing." This language, Denver City contends, is the parties' agreed-upon "contractual 60-day deadline," precluding adjudication beyond that date by the arbitrator.

---

R-38. Extensions of Time. The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

R-46. Modification of Award. Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

[4] Denver City cites *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.* for the proposition that the FAA "permits a party to seek an order compelling arbitration only '*in the manner provided for in [the parties'] agreement.*'" 489 U.S. 468, 474-75, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (emphasis in original).

[5] Denver City cites § 171.053(c)(1),(d) of the Texas Civil Practice & Remedies Code, providing in part, "The arbitrators shall make the award: (1) within the time established by the agreement to arbitrate . . . (d) The parties may extend the time for making the award either before or after the time expires. The extension must be in writing." Tex. Civ. Prac. & Rem. Code Ann. § 171.053(c)(1),(d) (West 2011)

[6] Under the common law, "[a]rbitrators complete their function and lose their authority to act after making a final determination on a matter. This principle, known as the doctrine of functus officio, prevents an arbitrator from reexamining the merits of a final award." *AO Techsnabexport v. Globe Nuclear Servs. & Supply GNSS,* No. 09-2064, 2010 U.S. App. Lexis 25640, at *15 (4th Cir. Dec. 15, 2010) (citations omitted).

6

We review a trial court's vacation, modification or confirmation of an arbitration award *de novo*. *Werline v. East Texas Salt Water Disposal Company,* 209 S.W.3d 888, 897 (Tex.App.--Texarkana 2006), *affirmed by East Texas Salt Water Disposal Company v. Werline*, 307 S.W.3d 267 (Tex. 2010) (citing cases for *de novo* review of vacation, modification, or confirmation of awards in arbitration); *Hisaw & Associates General Contractors, Inc. v. Cornerstone Concrete Sys., Inc.,* 115 S.W.3d 16, 18 (Tex.App.--Fort Worth 2003, pet. denied); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 105 S.W.3d 244, 250 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). *See also Aero Air, L.L.C. v. Sino Swearingen Aircraft Corp.,* No. 07-07-0271-CV, 2009 Tex.App. Lexis 5187, at *2 (Tex.App.--Amarillo July 7, 2009, no pet.) (mem. op.) (citing *Kergosien v. Ocean Energy, Inc.,* 390 F.3d 346, 352 (5th Cir. 2004)) (vacatur reviewed *de novo*).

"Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline,* 307 S.W.3d 267, 271 (Tex. 2010); *Pheng Invs., Inc. v. Rodriquez,* 196 S.W.3d 322, 328 (Tex. App.--Fort Worth 2006, no pet.) (op. on reh'g); *Hisaw & Assocs.,* 115 S.W.3d at 18. *See Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984) ("The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"). "In the absence of a statutory or common law ground to vacate or modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints, including the sufficiency of the evidence to support the award." *IPCO-G&C Joint Venture v. A.B. Chance Co.,* 65 S.W.3d 252, 256 (Tex.App.--Houston [1st Dist.] 2001, pet. denied). Thus an award may not be vacated even though it is based on a mistake of law or fact. *Universal Computer Sys., Inc. v. Dealer*

*Solutions, L.L.C.,* 183 S.W.3d 741, 752 (Tex.App.--Houston [1st Dist.] 2005, pet. denied). The arbitrator's award on matters submitted for resolution carries the same effect as the judgment of a court of last resort. *San Antonio v. McKenzie Const. Co.,* 136 Tex. 315, 326, 150 S.W.2d 989, 996 (Tex. 1941). Every reasonable presumption in favor of upholding an award is indulged. *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 245 (Tex. 2002); *Kosty v. S. Shore Harbour Cmty. Ass'n,* 226 S.W.3d 459, 463 (Tex.App.--Houston [1st Dist.] 2006, pet. denied); *IPCO-G&C Joint Venture,* 65 S.W.3d at 255-56. While every reasonable presumption is indulged to uphold the arbitrator's decision, none is indulged against it. *Kosty,* 226 S.W.3d at 463; *IPCO-G&C Joint Venture,* 65 S.W.3d at 255-56. *Cf. Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987) ("The showing required to avoid summary confirmation is high").

The "authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 143, 327 S.W.2d 406, 408 (1959); *see City of Pasadena v. Smith,* 292 S.W.3d 14, 20 n.41 (Tex. 2009) (same). Arbitrators therefore exceed their powers by deciding a matter not properly before them. *Ancor Holdings, LLC v. Peterson, Goldman, & Villani, Inc.,* 294 S.W.3d 818, 829 (Tex.App.-- Dallas 2009, no pet.); *Pheng Invs.,* 196 S.W.3d at 329. The FAA and TAA authorize a trial court to vacate an arbitration award if the arbitrator exceeded his powers. 9 U.S.C.A. § 10(a)(4) (West 2009); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A) (West 2011).

8

Generally, an award in arbitration is not final when "a substantive task remain[s] for the arbitrator to perform." *McKinney Restoration Co. v. Ill. Dist. Council No. 1,* 392 F.3d 867, 871 (7th Cir. 2004); *see also Millmen's Local 550, United Bhd. of Carpenters & Joiners of Am. v. Well's Exterior Trim,* 828 F.2d 1373, 1376-77 (9th Cir. 1987); *Pub. Serv. Elec. & Gas Co. v. System Council U-2,* 703 F.2d 68, 70 (3d Cir. 1983).[7] This is true even if not all of the parties to the arbitration believe further action is warranted. *Orion Pictures Corp. v. Writers Guild of America, West, Inc.,* 946 F.2d 722, 725 (9th Cir. 1991). "In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them," and "[g]enerally, for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages." *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 413-14 (2d Cir. 1980) (discussing FAA); *A/S Siljestad v. Hideca Trading, Inc.,* 678 F.2d 391, 392 (2d Cir. 1982) (per curiam) (same); *see also Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* 157 F.3d 174, 176 (2d Cir. 1998) (per curiam) ("[A]n arbitration award, to be final, must resolve all issues submitted to arbitration, and . . . it must resolve them definitely enough so that the rights and obligations of the two parties, *with respect to the issues submitted*, do not stand in need of further adjudication") (emphasis in original)); *Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.,* 256 F. Supp. 2d 594, 639 (S.D. Tex. 2002) ("As a general rule, a final and definite arbitration award must both resolve all the issues

---

[7] In this commercial arbitration case, we find the cited labor arbitration cases appropriate to the analysis. *See Painewebber Inc. v. Elahi,* 87 F.3d 589, 594 n.6 (1st Cir. 1996) ("Earlier, one might have doubted whether appellate decisions concerning labor arbitration would apply to commercial arbitration. Today, there is little question").

submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award") (internal quotations omitted).

An award that leaves only the ministerial determination of the amount of damages, however, may nonetheless be final. *See Flender Corp. v. Techna-Quip Co.,* 953 F.2d 273, 280 (7th Cir. 1992) (court found award was final and definite because calculation of commissions due on sales was a "ministerial computation," "easily ascertainable" from documents the arbitrator required produced); *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists and Aerospace Workers,* 802 F.2d 247, 251 (7th Cir. 1986) (precise amount of backpay could be determined "automatically" without judgment or discretion by resort to company's records and this "ministerial" detail did not preclude finality). "Whether the award indicates [it is] final and whether the arbitrator intended the award to be final are factors in determining if an arbitration award is final." *Local 36, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Pevely Sheet Metal Co., Inc.,* 951 F.2d 947, 949 (8th Cir. 1992). In *Pevely Sheet Metal* the Eighth Circuit held that an arbitration award is not final if resolving the undetermined damage issue does "not merely involve a simple calculation, but require[s] resolution of significant issues." *Id.* at 949. *See also Millmen Local 550,* 828 F.2d at 1377. Finality of arbitration requires a "'complete arbitration.'" *Pevely Sheet Metal*, 951 F.2d at 949-50. Requiring a complete arbitration is a rule of prudence. *GES v. Bates,* No 97 C3716, 1998 U.S. Dist. Lexis 3606, at *11 (N.D. Ill. Mar. 20, 1998).

As noted, the JOA and PPA required the arbitrator to conduct a hearing within thirty days of his selection, and then notify the parties of his decision within sixty days of the conclusion of the hearing. The agreements do not define the term "hearing."

Significantly, however, after a preliminary hearing, in February 2006 the parties and arbitrator agreed on a scheduling order, in which they agreed that an "evidentiary hearing on the merits," which they labeled the "merits hearing," would take place in Dallas and conclude no later than May 26, 2006, unless extended by the arbitrator for reasons beyond the control of the arbitrator or parties. The scheduling order further provided that the arbitrator would "determine when the Arbitration is closed for purposes of beginning the sixty (60) days deadline for rendering a decision." The arbitrator did not observe the "sixty days from close of hearing" requirement of the JOA and PPA but, pursuant to authority granted him in the scheduling order, ordered "the record closed" on August 15, 2006.

The November 15 award only determined questions of liability while providing a formula for subsequent calculation of damages. It specified, "The Arbitrator shall keep the record open on this matter for a period of forty-five (45) days from the date of this Award for the limited purposes of addressing any disputes that arise that are directly related to the computation or payment of damages." The arbitrator could not calculate damage amounts for inclusion in the November 15 award because he did not have before him evidence of damages incurred after February 2006. Golden Spread and GS Generating were therefore to follow a stated methodology and calculate the specified damages. The methodology the arbitrator ordered, both for the calculation of damages

11

and for the correction of future billings, incorporated that devised by Golden Spread's expert David Surls, which has been referred to in the confirmation litigation as the "Surls macro."[8] Evidence before the trial court showed the macro did not work as written. Golden Spread and GS Generating then submitted a lengthier, modified formula which Denver City viewed as a deviation from the November 15 award. Golden Spread and GS Generating took "strong exception" to changes made in Denver City's billings and its claimed failure to recognize or pay damages awarded. Golden Spread and GS Generating then moved the arbitrator to resolve the dispute and with their pleading transmitted a "Workbook including the backup support" which they asserted "detail[ed] the amounts" they were due from Denver City. From these calculations, Golden Spread and GS Generating requested the arbitrator determine the proper method for calculating pre-judgment interest and confirm an amount of money due each in excess of $2.5 million.[9]

The arbitrator found and ordered that he possessed authority to determine damages pursuant to the criteria set forth in the Award and to grant the relief provided by the December 28 order. He confirmed the damage calculations submitted by Golden Spread and GS Generating, and awarded Golden Spread $2,586,905 and GS Generating $2,513,919.

---

[8] According to testimony by Denver City at the confirmation-vacatur hearing, a macro "is a program that runs the Excel worksheet that it's linked to."

[9] Rule R-36 authorizes an arbitrator to reopen the hearing on his own initiative any time before the award is made provided reopening does not prevent making the award within the specific time agreed by the parties.

In this court, Golden Spread and GS Generating contend the damage calculation anticipated by the November 15 award was "ministerial." Denver City contends the December 28 order impermissibly modified the November 15 award, or was itself a new award. We agree with neither party. In substance, determining the amount of damages flowing to Golden Spread and GS Generating from the found liability of Denver City was not a ministerial task but one requiring deliberation including resolution of disputed party positions. Nor can we agree that the December 28 order modified or amended a final award, or constituted a new award. The November 15 award expressed the arbitrator's decision on issues of liability and the intended means for calculation of damages. The record was reopened for calculation and enforcement of the damage amounts, leading to completion of the arbitration. Under the facts here presented, this procedure was not inconsistent with AAA Rule R-36. Within the time allowed by Rule R-36, the arbitrator delivered the December 28 order, which made the arbitration complete.

Nor did the procedure contravene the parties' agreements or statute. It appears indisputable that the arbitration "hearing" required by the JOA and PPA was the hearing completed in May 2006. By the terms of the JOA and PPA, the arbitration award was due within sixty days thereafter. But the parties and the arbitrator agreed on a different deadline which the November 15 award met. We find the conclusion inescapable that the contractual deadline, measured as sixty days from the hearing, was vitiated by the language of the February 2006 scheduling order and the arbitrator's actions pursuant to the authority given him in that scheduling order.

13

Denver City also illustrates its contention that the arbitrator exceeded his contractual authority with *Smith v. Transport Workers Union of Am., AFL-CIO Air Transport Local 556,* 374 F.3d 372 (5th Cir. 2004) (per curiam). In *Smith,* the court affirmed the district court's vacatur of an arbitration award "[b]ecause the arbitration agreement clearly restricts the authority of the arbitrators to amend or correct their award." *Id.* at 374. According to the arbitration agreement, "'The arbitrators *sua sponte* may amend or correct their award within three business days after the award, but the parties shall not have a right to seek correction of the award.'" *Id.* Nevertheless, the arbitration panel modified the award more than a month after the initial award. *Id.* The Fifth Circuit observed that arbitration is a matter of contract and "the plain wording of the arbitration agreement contemplates that the arbitrators will not consider correcting the arbitral award at all at the behest of the parties, and forbids a correction or amendment on the arbitrators['] own motion more than three business days after the award." *Id.* at 374-75. Relying on the restrictive language of the arbitration agreement, the court concluded that the arbitrators exceeded their powers by modifying the initial award. *Id.* at 375.

Analogizing *Smith* to the case at bar is hindered somewhat by the per curiam opinion's limited discussion of the facts. That said, we assume the "initial award" rendered in favor of Smith was the result of a complete arbitration. A complete arbitration did not occur here until the arbitrator rendered a decision on damages.[10] And

_____

[10] We acknowledge the November 15 award contains a paragraph reading, "This AWARD is in full settlement of all claims submitted to this arbitration. Any issue not specifically decided is hereby DENIED." Given the award's express provisions for

14

here the arbitrator's actions were consistent with, not contrary to, the scheduling order and AAA rules. We accordingly find *Smith* distinguishable. Denver City's first issue is overruled.

Second Issue

Denver City argues in its second issue that, if we vacate the December 28 order the damage award incorporated into the trial court's judgment "is too vague to stand." Because we have overruled Denver City's first issue and do not vacate the December 28 order, discussion of Denver City's second issue is unnecessary to the disposition of the appeal. Tex. R. App. P. 47.1.

Third Issue

In its third issue, Denver City argues the trial court erred by failing to vacate the award because it was not mutual, final, and definite.

The grounds for vacatur under the FAA are limited to those specified by § 10 of the Act. *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 583-84, 128 S.Ct. 1396, 1403, 170 L.Ed.2d 254 (2008); *Citigroup Global Mkts. Inc. v. Bacon,* 562 F.3d 349, 350 (5th Cir. 2009). Section 10 provides the ground Denver City here argues. The district court may vacate an award if the arbitrator "so imperfectly executed [his powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10(a)(4) (West 2009).

---

calculation of damages and resolution of disputes over damages, and considering the award document as a whole, we cannot read that paragraph as controlling.

As used by § 10(a)(4) of the FAA, "mutual" and "final" mean "that the arbitrators must have resolved the entire dispute (to the extent arbitrable) that had been submitted to them" and "definite" means "that the award is sufficiently clear and specific to be enforced should it be confirmed by the district court and thus made judicially enforceable." *IDS Life Ins. Co. v. Royal Alliance Associates, Inc.,* 266 F.3d 645, 650 (7th Cir. 2001) (citations omitted).

Denver City contends the award is indefinite because it failed to "resolve the key issue submitted to arbitration--how is [Denver City] supposed to bill the Golden Spread entities for start-up energy?" Denver City notes it was ordered by the arbitrator "to cease and desist from certain billing practices and to change its future billing procedures by incorporating a specific Excel spreadsheet "'macro'" introduced into evidence at the arbitration hearing by Mr. Surls." Denver City further argues the Surls macro was intended to modify Denver City's billing spreadsheet in the future "by removing fuel used to generate electricity from the 'Start_Fuel_1' and 'Start_Fuel_2' columns of the [monthly generation report] . . . . The Surls macro was supposed to accomplish that, but it did not." It seems to us the contention made is not that the arbitrator failed to complete his assignment as to future billing procedures, for it is clear the award provided detailed direction for modification of the billing practices; rather, the nut of Denver City's reasoning is the formula the arbitrator incorporated into his award was wrong. The macro devised by expert Surls does not work.

"The requirements of finality and definiteness are ones more of form than of substance. They must not be confused with whether the arbitrator['s] award was correct

16

or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co.,* 266 F.3d at 650 (citing *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 1728 149 L.Ed.2d 740 (2001); *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987); *George Watts & Sons, Inc. v. Tiffany & Co.,* 248 F.3d 577, 579; (7th Cir. 2001); and *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.,* 86 F.3d 96, 100 (7th Cir. 1996)).

The law affords us an "extraordinarily narrow" review of a trial court's denial of vacatur and confirmation of award. *Myer v. American Life, Inc.,* 232 S.W.3d 401, 408 (Tex.App.--Dallas 2007, no pet.). Our concern thus "is not whether the arbitrator['s] reasoning is incomplete in the sense that a syllogism would be incomplete if it lacked its major or its minor premise but whether the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute." *IDS Life Ins. Co.,* 266 F.3d at 651. Confronting technical and complex contract terms and requirements, the parties chose arbitration for resolution of their disputes over the retroactive and prospective allocation of fuel costs. The arbitrator produced an award fixing specific recoverable damage amounts and providing a specified means of calculating future costs. That Denver City now believes the arbitrator rendered an unworkable solution to its future billing dilemma is not, under the constraints that bind us, a ground for vacatur. *See id.* 266 F.3d at 649 ("the grounds for challenging an arbitration award are narrowly limited, reflecting the voluntary contractual nature of commercial arbitration. Within exceedingly broad limits, the parties to an

17

arbitration agreement choose their method of dispute resolution and are bound by it however bad their choice appears to be either *ex ante* or *ex post"*).

Denver City presents further arguments in support of its third issue, but as we perceive them they either are predicated on our vacating the arbitrator's December 2006 order, or reiterate contentions addressed in our discussion of its first issue. Denver City's third issue is overruled.

Fourth Issue

By its fourth issue, Denver City complains that the entire award should be vacated because the arbitrator exceeded his powers by ruling on an issue not submitted to arbitration and his ruling conflicts with this court's decision in *Golden Spread,* 269 S.W.3d 183.

The nub of this complaint is the arbitrator gratuitously determined how to price fuel used to generate electricity. The complained-of language appears in a section of the November 15 award entitled "conclusions of law as to Golden Spread and [Denver City]," wherein the arbitrator stated, "Under the express terms of the PPA, recovery by [Denver City] for costs for all fuel used to generate energy is subject to the PPA Heat Rates."[11]

"The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Techs.,* 134 F.3d 1054, 1057 (11th Cir. 1998) (citing *First*

---

[11] We do not decide whether this language, couched by the arbitrator as a "conclusion of law," rather than an award, is decretal.

*Options v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 1924-25, 131 L.Ed.2d 985 (1995) (stating that issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them)); *see Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding, per curiam) (holding that "[f]ederal and state law strongly favor arbitration," and "a presumption exists in favor of agreements to arbitrate under the FAA"). Under the FAA, any doubts as to whether a claim falls within the scope of an agreement to arbitrate are resolved in favor of arbitration. *Prudential Securities v. Marshall,* 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding, per curiam). Without a transcript of the arbitration proceedings, we will presume sufficient evidence and adequate reasoning support the award. *Grand Homes 96, L.P. v. Loudermilk,* 208 S.W.3d 696, 705 (Tex.App.--Fort Worth 2006, pet denied) (citing *Jamison & Harris v. Nat'l Loan Investors,* 939 S.W.2d 735, 737 (Tex.App.--Houston [14th Dist.] 1997, writ denied)).

Through the JOA and PPA, the parties agreed arbitration could reach "any dispute, controversy or claim arising out of, under or relating to this Agreement . . . unless otherwise provided in this Agreement or mutually agreed by the Parties." With similar breadth, the parties identified issues for the consolidated arbitration. According to the agreed scheduling order, the arbitral issues were found in twelve identified documents, inserts, and pleadings. First on the list was an October 11, 2005, letter from Golden Spread to Denver City "instituting Dispute Resolution pursuant to the PPA." The letter indicates one of the disputed issues was "[Denver City] has failed to properly calculate the Fuel Cost Rate as required by the terms of the [JOA]." According to the JOA, which identifies Denver City as "the Partnership," the fuel cost rate equals the sum

of, among other factors, "the quotient obtained by dividing the Partnership's start-up fuel cost allocation . . . by the product of the Partnership Energy for the Month of determination times the average PPA Heat Rate . . . ." The PPA assigns "PPA Heat Rate" the meaning contained in Appendix 2 of the PPA entitled, "PPA Capacity and PPA Heat Rate." This highly technical pamphlet includes attached heat rate schedules. It formulaically expounds on matters such as PPA heat rates during different plant operations. We quoted from the section pertaining to the combined cycle stage of operations in our heat rate discussion in *Golden Spread.* 269 S.W.3d at 189.

Given the breadth of the issues identified in the scheduling order, and the nature of the evidence introduced before the arbitrator, it is difficult to conclude the arbitrator exceeded the scope of the issues submitted. And, whether the conclusion was necessary to the arbitrator's analysis of other issues, or more fundamentally, whether it was even correct are matters beyond the scope of this review. Absent a transcript of the arbitration hearing and given the presumption favoring inclusion of the matter giving rise to the complained-of conclusion within the arbitral issues, we must conclude the arbitrator did not exceed the scope of his powers by issuing the complained-of conclusion.

Moreover, whether the complained-of conclusion stands in legitimate conflict with a declaration of the trial court in a portion of the case not referred to arbitration actually begs the inquiry whether the arbitrator committed a mistake in law. Down that avenue, we do not venture. *See, e.g., Loudermilk,* 208 S.W.3d at 705 (court will not vacate an award because of a "mistake of fact or mistake of law"); *Whiteside v. Carr, Hunt & Joy,*

20

*L.L.P.,* No. 07-06-0207-CV, 2007 Tex. App. Lexis 409, at *6-*7 (Tex.App.--Amarillo Jan. 23, 2007, pet. denied) (mem. op.) (citing *TUCO Inc. v. Burlington Northern RR. Co.,* 912 S.W.2d 311, 315 (Tex.App.--Amarillo 1995), *modified,* 960 S.W.2d 629 (Tex. 1997) ("Judicial scrutiny focuses on integrity of process rather than propriety of result"). Denver City's fourth issue is overruled.

## Conclusion

Having overruled each of Denver City's issues necessary for disposition of this appeal, we affirm the judgment of the trial court.


James T. Campbell
Justice