**Affirmed and Opinion Filed November 15, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00746-CV**
_____

**KENNETH GORDON AND HARDCORE TRUCKING SOLUTIONS LLC,**
**Appellants**
**V.**
**TRUCKING RESOURCES INC., Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-02385-2019**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Myers

Kenneth Gordon and Hardcore Trucking Solutions LLC appeal the trial court's judgment confirming an arbitration award in favor of Trucking Resources Inc. Appellants bring three issues on appeal contending (1) the trial court lacked jurisdiction to order arbitration because appellants are workers engaged in interstate commerce and cannot be compelled to arbitrate under the Federal Arbitration Act; (2) the trial court erred by compelling appellants to arbitrate because they did not sign the arbitration agreements; and (3) the trial court erred by denying appellants'

objections to the arbitration award and denying their motion to vacate the arbitration award. We affirm the trial court's judgment.

## BACKGROUND

Gordon is the owner of Hardcore Trucking Solutions LLC (HTS), a company that recruits truck drivers for transportation companies. Appellee is a competing recruiter of truck drivers.

Two of appellee's employees, Sylvia Trotter and Eric Howse, each signed noncompetition agreements with appellee that included an arbitration provision:

> Should violation, disagreement or dispute occur between contracting parties arising out of, or connected with this agreement, which cannot be adjusted by and between the parties involved, the disputed disagreement shall be submitted to the American Arbitration Association located in Texas and all parties agree to abide by the decision of the referees of said Association. Judgment, upon award, may be entered in any court having jurisdiction thereof. The parties agree that the courts may only be used to issue or enforce [an] injunction and to enforce a judgment.[1]

In 2017, Trotter and Howse ceased working for appellee and went to work for HTS. Appellee brought suit against appellants in 2017, but that suit was dismissed for want of prosecution.

On May 2, 2019, appellee filed this lawsuit against appellants, Trotter, and Howse. Appellee alleged Trotter and Howse breached their contracts with appellee

---

[1] The quoted arbitration provision is from the noncompetition agreement signed by Trotter. The arbitration provision in the agreement signed by Howse is identical except for the last sentence, which reads: "The parties agree that the courts may be used to issue or enforce an injunction and to certify a judgment and or [sic] to enforce a judgment."

by using appellee's confidential information, soliciting appellee's clients and sending their business to HTS, and advertising for staffing in the same markets in which appellee advertised. Appellee sued appellants for tortious interference with contract and prospective business relationships and for conspiring with Trotter and Howse to use appellee's confidential information and for conspiring with Trotter and Howse for them to breach their contractual and common law duties to appellee.

Three weeks later, on May 24, 2019, appellee moved to stay the proceedings in the trial court and compel the parties to arbitrate. Trotter filed objections to the motion to stay proceedings and compel arbitration. On November 15, 2019, the trial court granted appellee's motion to stay proceedings in the trial court and compel arbitration.

On June 3, 2021, the arbitrator issued his award. The arbitrator found Trotter took appellee's confidential information and disclosed it to appellants, thereby breaching her duty of loyalty to appellee, and that appellants conspired with Trotter for her to breach her duty of loyalty to appellee and obtain appellee's confidential information. The arbitrator determined that appellants should be required to disgorge their profits. The arbitrator also found appellants refused to produce or destroyed documents necessary to compute appellants' profits because of the likely prejudicial effect of the documents. Appellee capped its claim at $300,000. Appellee showed appellants had revenues of about $1.24 million, and the arbitrator determined that due to appellants' abuse of the discovery process, it could be inferred

–3–

that HTS's profit from its revenues was at least $300,000. The arbitrator found "[s]uch an inference is both reasonable and justified." The arbitrator awarded appellee $299,999 against appellants and Trotter, jointly and severally, and the arbitrator denied appellants' request for attorney's fees.

Eighteen days after the arbitrator's award, the trial court signed an order confirming the award and rendering judgment in conformity with the award. Twenty-one days after the court's confirmation of the arbitration award, appellants filed a motion to vacate the confirmation of the award. Eighty-four days after the arbitration award, and sixty-six days after the confirmation of the award, appellants filed objections to the arbitration award and moved for the court to vacate the award. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). They filed a notice of appeal the same day.[2]

**ORDER COMPELLING ARBITRATION**

In their first issue, appellants contend the arbitration provisions in Trotter's and Howse's employment agreements are not enforceable because Trotter and Howse are workers engaged in interstate commerce and are exempt from the Federal Arbitration Act (FAA) under 9 U.S.C. § 1. In their second issue, appellants contend

---

[2] Before the briefing on appeal, appellee moved to dismiss the appeal, asserting appellants' notice of appeal was untimely. We denied the motion to dismiss in our order of January 10, 2022. Appellee presents the same arguments in its brief, urging we lack jurisdiction to consider this appeal. We reject those arguments and conclude appellants' notice of appeal was timely for the reasons set forth in our order of January 10, 2022.

–4–

the trial court erred by granting appellee's motion to compel arbitration against appellants because appellants did not sign the arbitration agreement. A party may not bring an interlocutory appeal of an order granting a motion to compel arbitration. 9 U.S.C. § 16(b)(2); *Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008). But a party may challenge the granting of the order compelling arbitration on appeal from the final judgment. *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007) (per curiam).

**9 U.S.C. § 1 Exemption for "workers engaged in . . . interstate commerce"**

In their first issue, appellants contend the trial court erred by compelling arbitration of appellee's claims because appellee's contracts with Trotter and Howse containing the arbitration agreements were "contracts of employment . . . of workers engaged in foreign or interstate commerce." Section 1 of the FAA states, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Appellants argue that Trotter and Howse are such employees and that the noncompetition agreements are "contracts of employment," so the FAA does not apply to them.

Appellee asserts that appellants waived this argument because they did not raise it in the trial court either before the trial court ordered the parties to arbitrate or before the arbitrator.

–5–

Texas courts have held that an objection to arbitration under the 9 U.S.C. § 1 exemption from arbitration must be raised before the trial court rules on a motion to compel arbitration. *See Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 WL 4680283, at *4 (Tex. App.—Beaumont 2020, no pet.) (mem. op.) (failure to object to arbitration procedure on the ground that 9 U.S.C. § 1 exemption applied before the trial court ruled on motion to compel arbitration waived the objection); *J.B. Hunt Transp., Inc. v. Hartman*, 307 S.W.3d 804, 809 (Tex. App.—San Antonio 2010, no pet.) (on appeal from denial of motion to compel arbitration, court of appeals refused to consider whether 9 U.S.C. § 1 exempted the dispute from arbitration when the appellee did not assert the application of the exemption in the trial court).

In this case, appellants first asserted the 9 U.S.C. § 1 exemption from arbitration in their post-arbitration motion to vacate the arbitration award. Because they did not assert the exemption from arbitration before the arbitration took place, they have not preserved the argument for appellate review. *See Conn*, 2020 WL 4680283, at *4; *Hartman*, 307 S.W.3d at 809.

Even if the 9 U.S.C. § 1 exemption could be raised for the first time after arbitration, appellants' arguments lack merit. Whether an individual is a worker engaged in interstate commerce depends on whether the individual performs the work. *See Sw. Airlines v. Saxon*, 142 S. Ct. 1783, 1788 (2022). The individuals subject to the exemption from the Federal Arbitration Act "must at least play a direct

and 'necessary role in the free flow of goods' across borders. Put another way, transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 1790 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)). Whether an arbitration agreement is part of a contract of employment of a worker engaged in interstate commerce is a question for the trial court before it compels arbitration. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) ("Given the statute's terms and sequencing, we agree with the First Circuit that a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration.").

Thus, the question before us is whether interstate truck-driver recruiters like Trotter and Howse are actively engaged in transportation of goods across state or international borders. Appellants argue Trotter and Howse met this requirement for the exemption from arbitration because: "They 1) worked with materials that crossed state lines, such as trucks and truck drivers they recruited, 2) relied on billings from out-of-state trucking companies, out-of-state . . . driver databases, and out-of-state advertising platforms, and 3) used interstate mail and phone calls." None of these facts show that appellants or Trotter and Howse were actively engaged in the transportation of goods, only that they recruited people who were. Nothing in the record shows appellants or Trotter and Howse drive trucks or handle the goods on the trucks.

Appellants cite *Western Dairy Transport v. Vasquez*, 457 S.W.3d 458 (Tex. App.—El Paso 2014, no pet.), where the court held that a truck mechanic was a transportation worker exempt from the Federal Arbitration Act under 9 U.S.C. § 1. In making this determination, the court looked to eight factors from the Eighth Circuit's opinion in *Lenz v. Yellow Transportation, Inc.*, 431 F.3d 348 (8th Cir. 2005):

1. whether the employee works in the transportation industry;

2. whether the employee is directly responsible for transporting the goods in interstate commerce;

3. whether the employee handles goods that travel interstate;

4. whether the employee supervises employees who are themselves transportation workers, such as truck drivers;

5. whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA;

6. whether the vehicle itself is vital to the commercial enterprise of the employer;

7. whether a strike by the employee would disrupt interstate commerce; and

8. the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

*Id.* at 352 (8th Cir. 2005). In *Lenz*, the 8th Circuit applied these factors and determined that a customer-service representative for a freight transportation company was not exempt from arbitration under 9 U.S.C. § 1. The El Paso Court of

Appeals applied these factors to determine that a truck mechanic was a worker engaged in interstate commerce under 9 U.S.C. § 1. *Vasquez*, 457 S.W.3d at 466.

Applying the *Lenz* factors to truck-driver recruiters, as that position is explained in the record before us, does not show that the recruiters are workers engaged in interstate commerce under 9 U.S.C. § 1. On the first factor, we will assume for purposes of this opinion that the recruiters work in the transportation industry. However, the remaining factors are negative. The recruiters are not directly responsible for transporting the goods in interstate commerce; they do not handle the goods; the record does not show they supervise the truck drivers who handle the goods; the record does not show and appellants have not cited this Court to any statute or regulation providing special arbitration for recruiters of truck drivers; the record does not show that Trotter and Howse drove vehicles in interstate commerce; a strike by recruiters of truck drivers might be inconvenient for the trucking companies who would have to hire drivers directly instead of through recruiters, but nothing in the record shows a strike by the recruiters would disrupt interstate commerce or halt trucks from delivering goods; and there is no evidence that Trotter and Howse required a vehicle to carry out their duties of recruiting truck drivers. *See Lenz*, 431 F.3d at 352–53.

Appellants also cite the Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). In that case, the supreme court held that supervisors of cargo handlers for an airline who also acted as cargo handlers when

–9–

necessary were workers engaged in interstate commerce under 9 U.S.C. § 1 because they handled the cargo. The Supreme Court did not address whether the workers' supervisory duties qualified them for the exemption from compelled arbitration. *Id.* at 1790. The Supreme Court stated that for a worker to qualify for the exemption, the worker "must at least play a direct and 'necessary role in the free flow of goods' across borders. Put another way, transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.* (quoting *Circuit City*, 532 U.S. at 121). The Court concluded that cargo handlers for an airline met that standard. Recruiters of truck drivers, however, do not. The record does not show that recruiters play a direct and necessary role in the transportation of goods across borders. The act of recruiting truck drivers for transportation companies does not actually move any goods. Nor does the record show that third-party recruiters are necessary even if they may be helpful and more efficient than the transportation companies at finding and hiring drivers.

We conclude appellants have not shown the contracts containing the arbitration agreements are exempt from arbitration because of 9 U.S.C. § 1. We overrule appellants' first issue.

## Arbitrability

In their second issue, appellants contend the trial court erred by ordering the parties to arbitrate because appellants did not sign any arbitration agreement with

appellee, the arbitration agreements did not contain language giving the employees notice that they were waiving their right to a jury trial, and under the arbitration agreements, the trial court did not have authority to compel the parties to arbitrate.

The arbitration provisions were in agreements signed by Trotter and Howse, not appellants. Appellee asserted in its motion to compel arbitration that appellants were subject to arbitration under the doctrines of assumption and equitable estoppel and because appellee's claims against appellants were intertwined with its claims against Trotter and Howse. Appellants did not file a response to the motion to compel arbitration, nor did they appear at the hearing on appellee's motion to compel arbitration. Their first complaint in the record of being compelled to arbitrate is in their post-arbitration objections to confirmation of the arbitration award. There, they argued, as they argue here, that they are not required to arbitrate because they did not sign an arbitration agreement, that the doctrines of assumption and equitable estoppel do not apply to them, that the cases permitting arbitration of intertwined claims involving nonsignatories are distinguishable, that the arbitration agreements did not notify Trotter and Howse that they were waiving their right to a jury trial, and that the trial court lacked authority under the language of the arbitration provisions to order the parties to arbitrate.

As a general rule, a party is required to present a timely complaint to the trial court before being allowed to raise the issue on appeal. *See* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the

record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ."). A timely objection is one that is made "at a point in the proceedings which gives the trial court the opportunity to cure any alleged error." *Crews v. Dkasi Corp.*, 469 S.W.3d 194, 201 (Tex. App.–Dallas 2015, pet. denied). The opportunity for the trial court to cure any error from requiring nonsignatories to arbitrate is before the court rules on the opposing party's motion to compel arbitration, not after the arbitration proceeding. *See My Three Sons, Ltd. v. Midway/Parker Med. Ctr., L.P.*, No. 05-15-01068-CV, 2017 WL 2351082, at *3 (Tex. App.—Dallas May 31, 2017, no pet.) (mem. op.) (nonsignatory party waived any error from being compelled to arbitrate when party did not raise that ground before court ordered the parties to arbitrate); *see also Nicholas v. Inhance Techs. LLC*, No. 01-18-00750-CV, 2019 WL 6703939, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 10, 2019, no pet.) (mem. op.) (party's failure to file response to motion to compel arbitration waived party's arguments on appeal that arbitration agreement was procured by fraud and lacked consideration). Likewise, the time for appellants to raise their other arguments opposing arbitration was before the trial court ruled on appellee's motion to compel arbitration.

Because appellants did not file a response to the motion to compel arbitration, they did not timely present their arguments for why the court should not have granted appellee's motion to compel arbitration. We conclude appellants did not timely raise

these arguments, and we cannot address them. TEX. R. APP. P. 33.1(a). We overrule appellant's second issue.

## CONFIRMATION OF ARBITRATION AWARD

In their third issue, appellants contend the trial court erred by confirming the arbitration award. Appellants assert the trial court erred by not vacating or modifying the award under the FAA because the arbitrator exceeded his powers, showed partiality, misbehaved and prejudiced a party, made a material miscalculation, and issued an "imperfect" award.

### Standard of Review

We review a trial court's decision to vacate or confirm an arbitration award de novo based on review of the entire record. *Humitech Dev. Corp. v. Perlman*, 424 S.W.3d 782, 790 (Tex. App.—Dallas 2014, no pet.). "[A]n award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it." *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (quoting *City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (Tex. 1941)). The award is presumed valid, and it is entitled to great deference. *Humitech*, 424 S.W.3d at 790. The award is conclusive on the parties as to all matters of fact and law; in other words, we may not vacate an award even if it is based upon a mistake of fact or law. *Id.* We may not substitute our judgment for that of the arbitrators merely because we would have reached a different decision. *Id.*

–13–

A non-prevailing party seeking to vacate an arbitration award bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 401 (Tex. App.—Dallas 2009, pet. denied). "When there is no transcript of the arbitration hearing, the appellate court will presume the evidence was adequate to support the award." *Id.* (quoting *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 546, 568 (Tex. App.—Dallas 2008, no pet.)).

In this case, there is no record of the arbitration proceedings except for the arbitration award. Appellants' motion to vacate the award purports to provide the background and procedural history describing the proceedings before the arbitrator, but that description does not constitute a record of the documents and the proceedings before the arbitrator, nor is it evidence that could be considered by the trial court or this Court.

**Grounds for Vacating or Modifying Arbitration Award**

Section 9 of the FAA requires the trial court to confirm an arbitration award upon application by a party "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Section 10 provides that the court may vacate an arbitration award in the following situations:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.* § 10(a). Section 11 provides that the court may modify or correct an arbitration award in the following situations:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

*Id.* § 11. These are the exclusive bases for vacating or modifying an award under the FAA. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."); *Tex. Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("The Supreme Court has held that the statutory bases for vacating an arbitrator's award are the only grounds on which a court may vacate an award."); *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 828 (Tex. App.—Dallas 2009, no pet.) ("the Supreme Court made clear that sections 10 and 11 are the exclusive grounds for vacating and modifying an arbitration award under the FAA").

–15–

An arbitrator exhibits evident partiality under 9 U.S.C. § 10(a)(2) if he does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality. *Jones v. Carlos & Parnell, M.D., P.A.*, No. 05-17-00329-CV, 2017 WL 4930896, at *5 (Tex. App.—Dallas Oct. 31, 2017, pet. denied) (mem. op.); *Karlseng v. Cooke*, 286 S.W.3d 51, 56 (Tex. App.—Dallas 2009, no pet.). The arbitrator's findings and rulings, standing alone, are not "evident partiality," nor are asserted errors of fact or law. *See Jones*, 2017 WL 4930896, at *6–7.

"Misbehavior" under 9 U.S.C. § 10(a)(3) is a catch-all for other procedural irregularities such as an arbitrator's running afoul of his or her own rules in conducting the arbitration or receiving evidence ex parte. *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 811 (Tex. App.—Dallas 2008, pet. denied). "Misbehavior" does not include erroneous factual or legal determinations. *See Valdes v. Whataburger Rests., LLC*, No. 14-16-00222-CV, 2017 WL 2602728, at *3 (Tex. App.—Houston [14th Dist.] June 15, 2017, no pet.) (mem. op.). Courts cannot determine alleged misbehavior by an arbitrator without a record of the arbitration proceeding. *Id.*

Arbitrators exceed their powers under 9 U.S.C. § 10(a)(4) when they decide matters not properly before them. *Ancor Holdings*, 294 S.W.3d at 829. Arbitrators may also exceed their powers when the arbitration award is not rationally inferable from the parties' agreement. *Id.* Any doubts concerning the scope of what is

arbitrable are resolved in favor of arbitration. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied). Unless the arbitration agreement expressly provides for expanded review of the arbitration proceedings, errors of fact or law do not constitute the exceeding of powers when those errors do not concern whether an issue to be decided was properly before the arbitrators or whether the arbitration award was rationally inferable from the parties' agreement. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97–102 (Tex. 2011). In this case, the arbitration agreements do not permit expanded review of the arbitration proceedings.

"Evident material miscalculation" in 9 U.S.C. § 11(a) refers to a mathematical error on the face of the award. 9 U.S.C. § 11(a); *see Mid Atlantic Capital Corp. v. Bien*, 956 F.3d 1182, 1192–93 (10th Cir. 2020); *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998).

An argument that an award is "imperfect" must concern a matter of form that does not affect the merits of the controversy. *Id.* § 11(c).

## Analysis

Appellants argue the arbitrator exceeded his powers, showed partiality, misbehaved and prejudiced a party, made a material miscalculation of figures or "anything" in the award, or issued an imperfect award. *See* 9 U.S.C. § 10(a)(2), (3), (4); *id.* § 11(a), (c).

–17–

Appellants assert the arbitrator exceeded his powers, showed evident partiality, misbehaved and prejudiced a party, made a material miscalculation of figures or "anything" in the award, or issued an imperfect award by:

- finding there was a breach of fiduciary duty;

- ordering appellants to provide discovery;

- imposing discovery sanctions against appellants, which appellants assert constituted "death penalty" sanctions;

- determining Gordon provided virtually no discovery when he provided discovery;

- determining Howse, Trotter, and Gordon conspired with HTS because, appellants argue, agents and principals cannot conspire;

- finding Trotter or appellants breached a duty of loyalty to appellee by contacting each other;

- making damages findings not supported by any evidence of the value of appellee's trade secrets;

- stating in the award that appellee's secret recording of Howse was the best piece of evidence showing a conspiracy; and

- determining disgorgement based on evidence of HTS's bank deposits and not based on evidence of its profits.

The record does not show that appellants objected to any of these before the arbitrator; therefore, they were not preserved for review by the trial court. *See* TEX. R. APP. P. 33.1(a); *Nafta Traders*, 339 S.W.3d at 101 (in considering arguments of error by the arbitrator, "complaints must have been preserved, all as if the award were a court judgment on appeal"). Further, none of the arbitrator's actions were subject to the challenges brought by appellants.

–18–

The arbitrator's actions do not constitute evident partiality by the arbitrator because the asserted actions do not show the arbitrator failed to disclose facts that might create a reasonable impression of the arbitrator's partiality. *See Jones*, 2017 WL 4930896, at 6–7.

The arbitrator's actions do not constitute misbehavior prejudicing a party because appellants have not shown they constitute a violation by the arbitrator of the arbitrator's rules. *See Roehrs*, 246 S.W.3d at 811. Moreover, without a record of the arbitration proceeding, such a determination would be impossible. *Valdes*, 2017 WL 2602728, at *3.[3]

Concerning whether the arbitrator exceeded his powers under 9 U.S.C. § 10(a)(4), the arbitration agreements provided the arbitrator authority to decide any "violation, disagreement or dispute . . . arising out of, or connected with this agreement." Appellants do not explain in this Court, and they did not explain in the

---

[3] Appellants do assert on appeal one act where the arbitrator failed to follow the American Arbitration Association rules. Appellants argue that the award was imperfect because the arbitrator failed to follow AAA R-58. Appellants state:

> Despite [appellee's] numerous motions for sanctions and to compel discovery, there never was an order for sanctions against Gordon & HTS—until the *Award*. Offering no opportunity to cure such deficiencies or make an argument, the arbitrator violated R-58 and Gordon & HTS's due process rights, which led to an imperfect *Award*.

According to appellants' brief, AAA R-58 requires the arbitrator provide the party to be sanctioned with the opportunity to respond before making any determination regarding sanctions. Without the record of the arbitration proceedings, the record does not show what motions for sanctions appellee made, their content, whether the arbitrator had made a previous sanctions order against appellants, or whether appellants objected to the arbitrator's imposition of sanctions without their having an opportunity to respond to the motions for sanctions. Appellants did not assert a violation of R-58 in the trial court, and with no record of the arbitration proceedings, they cannot show they objected to any failure by the arbitrator to follow R-58. Accordingly, they have not preserved any error.

trial court, why the dispute was not properly before the arbitrator or why the arbitration award was not inferable from the arbitration agreement. *See Ancor Holdings*, 294 S.W.3d at 829–30 (complaint that is actually that the arbitrator made an error of fact or law is not a complaint that the arbitrator exceeded his powers). We conclude appellants have not shown the trial court erred by not concluding the arbitrator exceeded his powers.

Appellants also assert the arbitrator's findings and determinations show he "miscalculated these facts and made 'significant negative inferences' on his misunderstanding" and "such clear error of law probably cause an improper *Award*." The asserted errors are not mathematical miscalculations of figures evident on the face of the award. *See Mid Atlantic Capital Corp.*, 956 F.3d at 1192–93. Therefore, they are not subject to modification by the trial court.

Appellants also argue that the arbitration award was "imperfect." A trial court may modify an award that is imperfect "in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11(c). All of appellants' asserted errors by the arbitrator concern the merits of the controversy, which do not constitute imperfections in the award under section 11(c).

Appellants assert in their brief on appeal that the arbitrator's negative inferences against appellants were "clear errors" of law. In their motion to vacate the arbitration award, they assert the arbitrator confused facts leading to "clear error" in his findings and conclusions. "Clear error" is not a ground for vacating or

modifying an arbitration award.  *See* 9 U.S.C. §§ 10, 11; *see Denver City Energy Assocs. L.P. v. Golden Spread Elec. Co-op, Inc.*, 340 S.W.3d 538, 549 (Tex. App.—Amarillo 2011, no pet.) ("neither error nor clear error nor even gross error is a ground for vacating an award").

We conclude appellants did not present to the trial court a proper ground for vacating or modifying the arbitrator's award.  Therefore, the trial court did not err by confirming the arbitration award and not vacating or modifying the award.  *See* 9 U.S.C. § 9 (court must grant application to confirm award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11").  We overrule appellants' third issue.

## CONCLUSION

We affirm the trial court's judgment.

210746f.p05

/Lana Myers//
LANA MYERS
JUSTICE

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENNETH GORDON AND
HARDCORE TRUCKING
SOLUTIONS LLC, Appellants

No. 05-21-00746-CV     V.

TRUCKING RESOURCES INC.,
Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-02385-
2019.
Opinion delivered by Justice Myers.
Justices Pedersen, III and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TRUCKING RESOURCES INC. recover its costs of this appeal from appellants KENNETH GORDON AND HARDCORE TRUCKING SOLUTIONS LLC.

Judgment entered this 15th day of November, 2022.