**Affirmed and Opinion Filed January 5, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00163-CV

### SALLY TYE F/K/A SALLY S. SHUFFIELD, INDIVIDUALLY AND AS CO-TRUSTEE OF THE SHUFFIELD LIVING TRUST, Appellant
### V.
### RODNEY M. SHUFFIELD, INDIVIDUALLY AND AS CO-TRUSTEE OF THE SHUFFIELD LIVING TRUST, Appellee

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-02071-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Smith, and Breedlove
Opinion by Justice Breedlove

The trial court granted summary judgment for appellee Rodney M. Shuffield, individually and as co-trustee of the Shuffield Living Trust, confirming arbitration awards made after the parties' divorce. In five issues, appellant Sally Tye f/k/a Sally S. Shuffield, individually and as co-trustee of the Shuffield Living Trust, contends the trial court erred by rendering judgment for appellee. Appellee has moved to dismiss the appeal for lack of jurisdiction. We conclude that we have jurisdiction over the appeal, but we further conclude that (1) the parties' agreement at mediation

to enter into a settlement agreement was not enforceable, (2) appellant's challenges to the arbitration awards were untimely, (3) the arbitration awards were final, and (4) appellant was not deprived of her right to a jury trial. Accordingly, we deny appellee's motion to dismiss the appeal and affirm the trial court's judgment.

BACKGROUND

In 2015, Sally Tye and Rodney Shuffield divorced after 35 years of marriage. During their marriage, they entered into a trust agreement creating the Shuffield Living Trust. During the divorce process, on October 9, 2015, they executed the Amended and Restated Living Trust (Amended Trust). Sally and Rod[1] were co-trustees under both the original Trust and the Amended Trust.

Article 16, section 8.b of the Amended Trust addressed conflict resolution. Among other provisions, the parties agreed that their daughter, Sarah Beth Shuffield Stephens (Sara Beth), would act as the arbitrator of any disputes that could not be resolved by mediation:

**8.b. Conflict Resolution**

During any period when both Trustmakers are serving as Trustees, if they encounter any dispute or impasse related to the Trust, its administration, proposed amendments, distributions, or any other aspect or function of the Trust requiring determination by the Trustees, Trustees will submitted [sic] the disputed matter for non-binding mediation. Either Trustee may invoke mediation on 10 days prior written notice to the other Trustee ("Mediation Notice"). After delivery of Mediation Notice to engage in mediation, both parties will have a period of 10 days to select a mediator. If they can't agree, then Sarah

---

[1] The parties use first names for their family members in all of their pleadings and briefing; accordingly, we do the same.

Beth will name a mediator on the 14th day after delivery of the Mediation Notice.

The parties will then hold a mediation during the 90 days following delivery of the Mediation Notice. **If the parties have failed to successfully reach a mutually acceptable settlement agreement in writing that determines the dispute within 90 days of the delivery of the Mediation Notice, then within 30 days thereafter Sarah Beth will make a binding determination as the agreed arbitrator of the issue.** Sarah Beth's determination may not be appealed to any court or other third party but will be binding on all parties. Sarah Beth will have no liability for any determination made by her as part of the above process, and the Trust and Trustmakers indemnify and hold her harmless from any claims made in connection with this procedure and any determination made by her.

The Trust will pay all expenses of the mediation and its associated procedure, including without limitation, legal representation to the extent either Trustee and/or Sarah Beth seeks such representation. [Emphasis added.]

Disputes later arose between the parties concerning the administration of the Amended Trust. The parties first attempted informal mediation, but were unsuccessful. Reluctant to call on Sarah Beth, Sally maintained that the parties' specific disputes did not fall within the Conflict Resolution provision of the Amended Trust because Rod was proposing the trust's partial dissolution. Rod, however, invoked the provision.

At Sarah Beth's direction, on March 13, 2019, the parties mediated their disputes. Counsel for the parties made an audio recording of "a settlement agreement . . . to resolve the issues that [the parties] currently have pending between them." The recording was transcribed and the transcript is included in the appellate record (Mediation Recording). The Mediation Recording contains a statement by the parties

–3–

that the Amended Trust "shall be restated and reconstituted by a new trust agreement that shall, from that point forward, after it is negotiated and everyone signed, be the operating agreement and shall replace and supplant the current agreement." The parties did not, however, sign any "restated and reconstituted" new agreement to "replace and supplant" the Amended Trust. Throughout the proceedings in arbitration and in the trial court, Sally has relied on the Mediation Recording to support her argument that the parties were bound by their recorded agreement, and that arbitration was therefore inappropriate and unnecessary.

Over Sally's objection, the parties' disputes were submitted to Sarah Beth for arbitration as provided in the Amended Trust. On August 7, 2019, Sarah Beth issued her first arbitration award (First Arbitration Award),[2] and on November 4, 2019, she issued a second award (Second Arbitration Award).[3] On December 20, 2019, Sarah Beth modified the First Arbitration Award by appointing former Judge Beth Maultsby as a co-arbitrator and ordering the parties to name her as the successor arbitrator in the amended and restated the Amended Trust. These awards addressed all of the issues in dispute between the parties.

---

[2] In the First Arbitration Award, Sarah Beth resolved disputes in nine areas, including distribution of certain assets, prohibition of unilateral withdrawals from the Amended Trust, accounting, amending the trust agreement, agreements required from new spouses, sale of certain property, health insurance, attorney's fees, and releases. In bold, italic type, Sarah Beth ruled that her decisions "are *effective immediately*." Sarah Beth also ruled that the Mediation Agreement was not enforceable, as we discuss further below.

[3] The Second Arbitration Award addressed Sally's unilateral withdrawal of money from the Amended Trust. The ruling, also "effective immediately," imposed sanctions of $500 "for every day that Sally refuses to re-deposit the moneys that she has unilaterally withdrawn since my initial arbitration ruling," among other sanctions.

–4–

Between the First and Second Arbitration Awards, both parties communicated with the arbitrator. By letter of August 21, 2019, Sally sought a "potential correction" in the First Arbitration Award, stating that the award omitted a one-time $80,000 distribution to her. On October 1, 2019, Rod submitted a motion to compel compliance with the First Arbitration Award, complaining that Sally had not taken the actions necessary to carry out Sarah Beth's rulings, and seeking sanctions for Sally's alleged "obstina[cy] and disrespect." And after the Second Arbitration Award, in a letter dated November 15, 2019, Sally's counsel requested that Sarah Beth reconsider the sanctions.

On March 24, 2020, Sarah Beth and Maultsby issued correspondence to all counsel stating that there were no outstanding issues relating to either award and both awards were final. In their letter, Sarah Beth and Maultsby stated:

> In summary, based on the finding in this letter, (1) no applications submitted by either party under Section 171.054 of the Tex. Civ. Prac. and Rem. Code are pending before the Co-Arbitrators; (2) there are no outstanding issues to be ruled on related to the First and Second Arbitration Awards; (3) the First and Second Arbitration Awards were in final form at the time they were issued; (4) the deadline to submit any applications to the Co-Arbitrators regarding the First and Second Arbitration Awards has passed; and (5) any future applications related to the First and Second Arbitration Awards may only be submitted to the court.

On April 13, 2020, Rod filed this suit seeking confirmation of the First and Second Arbitration Awards. On May 8, 2020, Sally filed an answer and counterclaim, alleging that the Mediation Recording was a binding and enforceable agreement. Sally also alleged that the sanctions imposed against her were improper

–5–

and the arbitration "was tainted by bias, interest, and misconduct." She asserted counterclaims for breach of contract, judicial termination or modification of the trust, and "breaches of trust." Rod filed an answer to Sally's counterclaims, alleging among other defenses that Sally's counterclaims were barred by "arbitration ruling/res judicata."

Rod moved for summary judgment on his affirmative defense of res judicata and on Sally's counterclaims, and sought judgment confirming the arbitration awards. Sally moved for summary judgment on the ground that the parties entered into a binding mediated settlement agreement and on the ground that Sarah Beth lacked authority to assess sanctions. The trial court granted Rod's motions, denied Sally's motions, and rendered judgment confirming the arbitration awards of August 7, 2019, November 5, 2019, and December 20, 2019.

This appeal followed. Rod filed a motion to dismiss the appeal, relying on the parties' agreement that "Sarah Beth's determination may not be appealed to any court or other third party but will be binding on all parties." By Order of November 14, 2022, this Court deferred Rod's motion to dismiss the appeal to the submissions panel.

After submission by oral argument on February 15, 2023, this Court ordered the parties to mediation and abated the appeal. The mediation was delayed due to the parties' health issues, but took place in September 2023. Although the mediator requested additional time to continue negotiations, he reported to the Court on

December 8, 2023, that the parties had reached an impasse. The case was returned to the Court's active docket by Order of December 13, 2023, and we now consider the parties' issues.

ISSUES AND STANDARDS OF REVIEW

Sally contends the trial court erred by rendering judgment for Rod because (1) the parties entered into an agreement that is enforceable under the Texas Uniform Electronic Transactions Act, TEX. BUS. & COM. CODE ANN. §§ 322.001–322.021 (TUETA), (2) Sarah Beth had no authority under the Amended Trust agreement to order monetary sanctions to enforce prior arbitration rulings, (3) Sarah Beth had no authority to render a decision without a hearing, presentation of evidence, or cross-examination of witnesses, (4) Sarah Beth's rulings were not final because she did not explicitly overrule pending requests for modification, and (5) Sally had a right under the Texas Arbitration Act to a jury trial to resolve fact issues regarding the arbitration process.

"Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and an appellate court reviews the entire record." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 683 (Tex. App.— Dallas 2010, pet. denied). Because Texas law favors arbitration, however, our review is "extremely narrow." *Id.*; *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002) (award of arbitrators on matters submitted to them is given the same effect as the judgment of a court of last resort). An arbitration award is presumed

–7–

valid and entitled to great deference. *Washburne v. Lynn Pinker Cox & Hurst, LLP*, No. 05-19-00716-CV, 2020 WL 4034978, at *3 (Tex. App.—Dallas July 17, 2020, pet. denied) (mem. op.); *see also CVN Grp., Inc.*, 95 S.W.3d at 238 (all reasonable presumptions are indulged in favor of arbitrator's award, and none against it). When reviewing an arbitration award, we may not substitute our judgment merely because we would have reached a different decision. *Allegheny Millwork, Inc. v. Honeycutt*, No. 05-21-00113-CV, 2022 WL 2062876, at *3 (Tex. App.—Dallas June 8, 2022, pet. denied) (mem. op.).

We review a trial court's decision to grant a motion for summary judgment de novo. *Helix Energy Sols. Grp., Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017). "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence

and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

At the outset we note the parties' agreement that the Texas Arbitration Act applies to their dispute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001– 171.098 (TAA).

## A. Rod's motion to dismiss this appeal

We begin by considering Rod's motion to dismiss the appeal. Rod argues that because the Amended Trust provided that "Sarah Beth's determination may not be appealed to any court or other third party but will be binding on all parties," we must dismiss the appeal.

Sally responds that the trial court's judgment states it is "final and appealable," and in any event, a waiver of the right to appeal an arbitration award "is not a waiver of the right to vacate or modify the award pursuant to the Texas Arbitration Act." We agree with Sally.

The TAA expressly provides that "[a] party may appeal a judgment or decree entered under this chapter or an order . . . confirming or denying confirmation of an award." TAA § 171.098(a)(3). Further, although the parties agreed they could not appeal Sarah Beth's determinations of "any dispute or impasse related to the Trust, its administration, proposed amendments, distributions, or any other aspect or function of the Trust requiring determination by the Trustees," their agreement does

not preclude judicial review of matters alleged under TAA §§ 171.088 and 171.091. *See* TAA § 171.088 (party may apply to court to vacate award "obtained by corruption, fraud, or other undue means" or on other specified grounds); *id.* § 171.091 (party may apply to modify or correct award).

In *Barsness v. Scott*, 126 S.W.3d 232, 235, 237–38 (Tex. App.—San Antonio 2003, pet. denied), the court concluded that the parties did not waive their right to appeal despite their agreement that the arbitrator's decision "shall be final and conclusive . . . and no appeal thereof shall be made by the parties." The court denied the appellee's motion to dismiss the appeal, explaining that "a waiver of appeal in the arbitration agreement does not preclude judicial review of matters concerning Texas Civil Practice and Remedies Code 171.088 and 171.091." *Id.* at 238; *see also Center Rose Ptrs., Ltd. v. Bailey*, 587 S.W.3d 514, 522, 524–25 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (where parties "did not agree that any judgment rendered on a decision of the arbitrators would be non-appealable," there was no waiver of the right to appeal the trial court's judgment confirming the arbitration award, even though the parties agreed the arbitrator's decisions would be "final, binding, and non-appealable"). We conclude that the Amended Trust's waiver provision does not preclude Sally from bringing this appeal.

Concluding that we have jurisdiction over this appeal, we deny Rod's motion to dismiss. *See Barsness*, 126 S.W.3d at 237–38.

**B. Sally's issues**

   **1. Enforceability of March 13, 2019 agreement**

   In her first issue, Sally argues that the Mediation Recording made at the March 13, 2019 mediation was enforceable under both the statute of frauds and TUETA, and accordingly, the trial court erred by denying her motion for summary judgment on that ground. We conclude, however, that even if the Mediation Recording met the requirements for a writing under those statutes, the substance of that writing was an agreement to negotiate and sign a new trust agreement, which the parties never accomplished. Accordingly, we conclude that the Mediation Recording is an unenforceable "agreement to agree," *see Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237–38 (Tex. 2016), and the trial court did not err by granting summary judgment for Rod on this ground.

   In *Fischer*, the supreme court discussed the enforceability of "agreements to agree." *See id.* The court explained, "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Id.* at 237 (internal quotation omitted). "If an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree is nugatory." *Id.* (internal quotation omitted). "Thus, to be enforceable, an agreement to agree, like any other contract, must specify all its

material and essential terms, and leave none to be agreed upon as the result of future negotiations." *Id.*

The court continued, "Conversely, agreements to enter into future contracts are enforceable if they contain all material terms." *Id.* at 238 (internal quotation omitted). "When an agreement to enter into a future contract already contains all the material terms of the future contract, courts can determine and enforce the parties' obligations, and concerns about indefiniteness and reasonable certainty do not arise." *Id.* (internal quotation omitted). An agreement that contains all of its essential terms is not unenforceable merely because the parties anticipate some future agreement. *Id.*

We conclude that the Mediation Recording left "material and essential terms . . . to be agreed upon as the result of future negotiations" and, accordingly, was not enforceable. *See id.* The recording begins with a statement by Rod's attorney Kevin Spencer that "we are going to state into the record the terms of a settlement agreement . . . to resolve the issues that [the parties] currently have pending between them." Spencer went on to discuss the terms, with clarifications and corrections made by Sally's attorney David Pyke:

- The Amended Trust "is a revocable trust, and it shall be restated and reconstituted by a new trust agreement that shall, from that point forward, ***after it is negotiated and everyone signed***, be the operating agreement and shall replace and supplant the current agreement." (Emphasis added).

- The new agreement "shall include at least the following new or changed terms":

–12–

- o Appointment of new, neutral arbitrator

- o A "balanced distribution provision"

- o A "special power of appointment" allowing each co-trustor "to appoint and direct the sum of $500,000" under specific conditions

- o An increase in the monthly distribution to each co-trustee

- o Certain distributions of real property in Wood County, Plano, and Dallas

- o Continued provision of health care for one of the parties' children

- o Release of all claims the parties "had, have, or may have against each other" "as of today."

- • "[T]his agreement as stated on this recording shall be binding upon the parties *pending a more formal settlement agreement*" to be prepared by the Spencer & Johnson law firm, *and a "newly restated trust agreement"* to be prepared by the Pyke law firm. (Emphasis added).

In sum, the parties agreed to negotiate a new trust agreement that would replace the Amended Trust. But they never did so, and, after exchanging draft agreements that were unacceptable to the opposing party, they submitted their disputes to arbitration within the period specified in the Amended Trust. Although the parties agreed on the subjects to be covered in the new agreement, they never reached agreement on terms that addressed, controlled, and disposed of those subjects.[4]

---

[4] We note that the First Arbitration Award makes rulings on many of the same issues as the Mediation Recording, suggesting that the parties agreed only on identified points of contention, not how to resolve them.

–13–

We conclude that the Mediation Recording was an agreement to negotiate a new written trust agreement, that is, an "agreement to agree" to new terms and conditions for the trust. *See Fischer*, 479 S.W.3d at 237–38. One of those terms was to replace Sarah Beth as arbitrator. But because no new trust agreement was negotiated and signed, the Amended Trust was never "replace[d] or supplant[ed]" as contemplated in the recording. The Amended Trust remained the operative agreement between the parties, with Sarah Beth as arbitrator.

We note that Sarah Beth rejected the Mediation Recording for the reason that it "was not 'in writing,'" and Sally argues this conclusion was erroneous. But we may not vacate an arbitration award for a mistake of fact or law. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.). Unless an arbitrator's error "result[s] in a fraud or some great and manifest wrong and injustice," an arbitration award will not be set aside. *Id.* And here, Sarah Beth's ultimate conclusion—that the Mediation Recording was not an enforceable agreement—is our conclusion as well. *See Fischer*, 479 S.W.3d at 237.

For these reasons, we overrule Sally's first issue.

**2. Arbitrator's award of sanctions**

In her second issue, Sally challenges the sanctions imposed against her in the Second Arbitration Award. Sarah Beth imposed a "sanction of $500 for every day that Sally refuses to re-deposit the monies that she has unilaterally withdrawn since my initial arbitration ruling of August 7, 2019." Sarah Beth also declined Sally's

–14–

request for an additional $80,000 disbursement and imposed a $500 per day sanction for failure to refinance certain property as ordered in the First Arbitration Award. Sarah Beth ruled that if Sally did not comply, then her right to make withdrawals from the Trust would be suspended.

In her "Original Answer and Counterclaim" filed on May 8, 2020, Sally alleged that the sanctions were improper because Sarah Beth "had no authority to issue sanctions" and "the arbitration was tainted by bias, interest, and misconduct." A court may vacate an arbitrator's award if the arbitrator exceeded her powers. TAA § 171.088(a)(3)(a); *Barsness*, 126 S.W.3d at 241. "[T]he authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Co. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959).

Rod responds that Sally's complaint is barred by limitations. We agree. Under TAA §§ 171.088(b) and 171.091(b), a party must make an application to the trial court to vacate, modify, or correct an arbitrator's award "not later than the 90th day after the date of delivery of a copy of the award to the applicant."[5] The sanctions were imposed in the Second Arbitration Award on November 4, 2019. Accordingly, the 90-day period for challenging the sanctions expired on February 2, 2020. Even

---

[5] The statute provides an extension of time to file applications alleging that "the award was obtained by corruption, fraud, or other undue means" until "not later than the 90th day after the date the grounds for the application are known or should have been known." TAA § 171.088(b). Sally does not contend that this extension applies to any of her complaints, however.

if the 90-day period did not begin to run until Sarah Beth's final modification of the award on December 20, 2019, Sally would have had to file her challenge by March 19, 2020. *See, e.g., New Med. Horizons II, Ltd. v. Jacobson*, 317 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("In [TAA] section 171.088, the Legislature clearly allows a party to assert a jurisdictional challenge based on an arbitrator's exceeding [her] authority, but it just as clearly requires that any such challenge be raised not later than 90 days from delivery of the award, or the award must be confirmed.").

Sally argues the time period for challenging the sanctions award was extended by her attorney's November 15, 2019 letter requesting that Sarah Beth reconsider the sanctions. In that letter, Sally's attorney David Pyke argued that the sanctions were "procedurally improper" and that Sally relied on a reasonable interpretation of Sarah Beth's First Arbitration Award in taking distributions from the trust, among other objections. Sally argues that because she asked the arbitrator to reconsider the award, the time period for filing a challenge to the sanctions in court did not begin to run until the arbitrator ruled on that request. She contends that Sarah Beth did not rule until March 24, 2020, extending the 90-day period to appeal until June 22, 2020.

Sally relies on Sarah Beth and Maultsby's letter of March 24, 2020 as an "award" triggering the 90-day periods under TAA 171.088 and 171.091. *See* TAA §§ 171.088(b), 171.091(b). She argues that accordingly, her counterclaim filed on May 8, 2020, was timely. The March 24 letter, however, was not "delivery of a copy

–16–

of the award" that Sally sought to challenge; delivery of the Second Arbitration Award that imposed the sanctions occurred on November 4, 2019. *See id.*

In paragraph 3 of the March 24 letter, Maultsby and Sarah Beth explained:

**Request to Reconsider Sanctions.**

a.  Sarah [Beth] was the sole Arbitrator at the time of the Second Arbitration Award and Mr. Pyke's letter dated November 15, 2019 requesting that she reconsider the sanctions issued in the Second Arbitration Award. It was Sarah's intent and belief that by not responding to the letter, the request to reconsider was denied. Neither party submitted an application to the Arbitrator under Section 171.054 of the Tex. Civ. Prac. and Rem. Code to modify or correct the Second Arbitration Award.

b.  An application to vacate the award pursuant to Section 171.088 of the Tex. Civ. Prac. Rem. Code is to be filed with the court (not the arbitrator) ninety days from the date of the delivery of the award.

The letter concluded with a summary paragraph stating that there were no pending applications or outstanding issues to be ruled on relating to the First and Second Arbitration Awards; the awards were in final form when they were issued; the deadlines to submit applications regarding the awards had passed; and any future applications regarding the First and Second Arbitration Awards "may only be submitted to the court."

Even after receiving this letter, however, Sally did not request that the trial court modify or vacate the award. She did not raise her challenge to the sanctions in the trial court until after Rod brought this suit seeking confirmation of the arbitration

–17–

awards, more than 90 days "after the date of delivery of a copy of the award to the applicant." TAA §§ 171.088(b); 171.091(b).

Further, because the March 24, 2020 letter did not amend, reconsider, or clarify the November 4, 2019 Second Arbitration Award, it did not extend the deadline for challenging that award. The court in *Bob Bennett & Assocs., P.C. v. Land*, No. 01-12-00795-CV, 2013 WL 2445369, at *4 (Tex. App.—Houston [1st Dist.] June 4, 2013, pet. denied) (mem. op.), reached a similar conclusion. In that case, the appellant filed a motion to modify the arbitration award thirty days after the award was issued. *Id.* The arbitrator issued a written order denying the motion thirty days later. *Id.* Thirty days after that ruling, the appellee filed a motion to confirm the award in the trial court. *Id.* Twenty-three days later—and more than ninety days after the original arbitration award—appellants filed their answer in the trial court and a motion to vacate the award. *Id.* Appellants conceded that their application to vacate was not filed within ninety days after delivery of the arbitration award, but argued their application was timely because it was filed less than ninety days after the arbitrator's order denying the modification motion. *Id.*

The court rejected the appellants' argument, explaining, "we find no authority to hold that the 90-day limitations period was extended by the . . . order denying Bennett's motion to modify the award, because the arbitrators did not modify the initial award or grant any relief." *Id.* at *5. Because the "order denying relief made no change to the original and definitive award," the court concluded that "the 90-

–18–

day limitations period for filing the vacatur application began to run on delivery of the [original] Arbitration Award." *Id.*

As in *Bob Bennett*, we conclude that because the arbitrators' March 24, 2020 letter did not modify the awards or grant any relief, it did not toll the time period for Sally to seek review of the Second Arbitration Award under the TAA. *See id.* Because Sally did not timely challenge the sanctions award, we overrule her second issue. *See* TAA §§ 171.088(b), 171.091(b).

**3. Necessity of evidentiary hearing**

Sally contends in her third issue that the trial court erred by confirming the arbitration awards because Sarah Beth did not conduct evidentiary hearings before making her rulings. Although nothing in the Amended Trust required Sarah Beth to conduct an evidentiary hearing, the TAA includes provisions for hearings conducted by the arbitrators. *See, e.g.,* TAA §§ 171.043–.053. An arbitrator's refusal "to hear evidence material to the controversy" is one of the grounds for vacating an arbitrator's award. *Id.* § 171.088(3)(C).

Rod responds that Sally's complaint about the lack of a hearing is barred by limitations. We agree. There is nothing in the record to reflect that Sally challenged Sarah Beth's failure to conduct a hearing until Sally filed her counterclaim on May

8, 2020.[6] This challenge came too late. TAA §§ 171.088(b); 171.091(b) (party must apply to vacate, modify, or correct an arbitrator's award "not later than the 90th day after the date of delivery of a copy of the award to the applicant"). We overrule Sally's third issue.

### 4. Finality of arbitrator's rulings

In her fourth issue, Sally contends that Sarah Beth's awards were not final because they "did not explicitly state that pending requests for modifications were overruled." She contends that "[w]hen significant fact or legal issues remain pending determination after an award, such as a challenge to the arbitrator's authority to issue sanctions, the award lacks finality," and she argues that both awards "contained language indicating the arbitration was ongoing, not concluded." She further argues that Sarah Beth's "unexpressed intent" to deny Sally's November 15, 2019 request for reconsideration could not trigger the 90-day period for seeking relief from the court.[7] She cites Sarah Beth's appointment of Maultsby to act as co-arbitrator "in making any necessary decisions and rulings under the terms of the current trust" to support her argument that all matters had not been resolved. She also points to the correspondence that was exchanged between the Second Arbitration Award and the

---

[6] Sally argues in her brief that she "objected to this procedure in a phone call between her attorney and [Sarah Beth's] attorney," but this contention lacks a citation to the record, and in any event, Sally proceeded to participate in the arbitration process in accordance with Sara Beth's instructions.

[7] Sally cites the March 24, 2020 letter in support, quoting the statement that "It was Sarah [Beth's] intent and belief that by not responding to [the November 15, 2019 letter], the request to reconsider was denied."

March 24, 2020 letter, including her request for reconsideration and Rod's response, Sarah Beth's December 7, 2019 modification, and Sally's February 21, 2020 statement of position regarding outstanding issues in the arbitration.

Sally cites *Bison Building Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012), in support of her arguments. In that case, however, the trial court confirmed the arbitrator's decision in part but held that there were further questions of fact to be determined by the arbitrator. *Id.* at 584. The supreme court held that the trial court's order was not a final, appealable order. *Id.* at 585. Here, the trial court confirmed the Second Arbitration Award without identification of any questions of fact for the arbitrator to determine.

In *Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 415–16 (Tex. App.—Fort Worth 2009, no pet.), the court discussed the requirements for finality of an arbitrator's decision:

> Texas case law generally recognizes that an essential prerequisite to the trial court's power to review an arbitral award is that the arbitrator's decision be final, not interlocutory. An arbitration award must determine all matters submitted or it will be unenforceable for lack of finality. Like a final judgment, an arbitral award should be conclusive on the parties as to all matters of fact and law. The award may not reserve judicial authority to be exercised in the future.

*Id.* (internal quotations, citations, and footnotes omitted); *see also Denver City Energy Assocs., L.P. v. Golden Spread Elec. Co-op., Inc.*, 340 S.W.3d 538, 545–46 (Tex. App.—Amarillo 2011, no pet.) (collecting cases on finality of arbitration awards).

–21–

Sarah Beth's rulings met these requirements. They addressed all of the issues the parties had submitted for arbitration. Further, both awards expressly stated that Sarah Beth's decisions were "effective immediately," with the text of those words emphasized by underlining, italics, or bold print. The awards reflected Sarah Beth's intent to avoid the necessity of future arbitrations, and in the March 24, 2020 letter, Sarah Beth resigned as arbitrator. We conclude Sarah Beth's rulings were final. *See id.*

As we have discussed, a party seeking to vacate, modify, or correct an arbitration award must apply to do so within 90 days. *See* TAA § 171.088(b) (application to vacate award); § 171.091(b) (application to modify or correct award). Sally did not make her request until May 8, 2020, when she filed her counterclaims, more than 90 days after Sarah Beth's rulings. We overrule Sally's fourth issue.

### 5. Right to jury trial

In her fifth issue, Sally complains that she was denied her right to trial by jury. She identifies "three primary camps" of fact issues to be resolved by a jury: (1) "fact issues preventing confirmation of the award and requiring it to be vacated," (2) "issues concerning the failure of the trust to fulfill its purpose," and (3) fact issues concerning the parties' settlement agreement. However, as we have discussed, Sally was required to bring her complaints about the arbitrator's awards on these matters within 90 days after the awards were delivered. *See* TAA §§ 171.088(b), 171.091(b).

The right to a jury trial in civil cases is not absolute. *See, e.g., Green v. W.E. Grace Mfg. Co.*, 422 S.W.2d 723, 725 (Tex. 1968); *Martin v. Commercial Metals Co.*, 138 S.W.3d 619, 626 (Tex. App.—Dallas 2004, no pet.). The summary judgment process provides a method of terminating a case when only questions of law are involved and there are no genuine issues of fact. *See Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 150 (Tex. App.—Texarkana 2002, pet. denied); *Du Bois v. Martin Luther King, Jr., Family Clinic*, No. 05-16-01460-CV, 2018 WL 1663787, at *7 (Tex. App.—Dallas Apr. 6, 2018, no pet.) (mem. op.). The process will not deprive litigants of a jury trial where material questions of fact exist. *Lattrell*, 79 S.W.3d at 150. However, if there is nothing to submit to a jury, then the grant of summary judgment cannot violate a party's constitutional right to a jury trial. *See Du Bois*, 2018 WL 1663787, at *7. We have already concluded that the trial court did not err in granting summary judgment and confirming the arbitration awards. Accordingly, Sally's right to a trial by jury was not violated. We overrule Sally's fifth issue.

## 6. Conclusion

We have concluded that we have jurisdiction over this appeal. *See Barsness*, 126 S.W.3d at 237–38. After de novo review of the entire record, *see Centex/Vestal*, 314 S.W.3d at 683, and reviewing the evidence in the light most favorable to Sally, we conclude that Rod met his burden to demonstrate that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law. *See Mann*

*Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. Accordingly, we affirm the trial court's judgment confirming the arbitrator's awards.

CONCLUSION

Rod's motion to dismiss this appeal is denied. The trial court's judgment is affirmed.

220163f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SALLY TYE F/K/A SALLY S. SHUFFIELD, INDIVIDUALLY AND AS CO-TRUSTEE OF THE SHUFFIELD LIVING TRUST, Appellant

No. 05-22-00163-CV     V.

RODNEY M. SHUFFIELD, INDIVIDUALLY AND AS CO-TRUSTEE OF THE SHUFFIELD LIVING TRUST, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas Trial Court Cause No. 380-02071-2020.
Opinion delivered by Justice Breedlove. Justices Partida-Kipness and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Rodney M. Shuffield, Individually and as Co-Trustee of the Shuffield Living Trust recover his costs of this appeal from appellant Sally Tye f/k/a Sally S. Shuffield, Individually and as Co-Trustee of the Shuffield Living Trust.

Judgment entered this 5th day of January, 2024.